O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LINDSEY S., | ) | Case No. 8:21-cv-02105-SP |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration, | ) | |
| Defendant. | ) | |

**I.**

**INTRODUCTION**

On December 22, 2021, plaintiff Lindsey S. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking review of a denial of disabled child's insurance benefits ("DCIB") for an adult disabled since childhood. The parties have fully briefed the issues in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two issues for decision: (1) whether the Administrative Law Judge ("ALJ") properly considered plaintiff's subjective statements; and (2)

1

whether the ALJ properly evaluated the medical opinion evidence. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 5-13; *see* Defendant's Memorandum in Support of Answer ("D. Mem.") at 1-10.

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly considered plaintiff's symptom statements and properly evaluated the medical opinion evidence. The court therefore affirms the decision of the Commissioner denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was 11 years old on September 1, 1990, the alleged disability onset date. AR at 58. She is a college graduate who also completed an esthetician program. AR at 450, 862, 880, 887-88. She has no past relevant work. AR at 70, 862.

On July 23, 2015, plaintiff filed an application for supplemental security income ("SSI") due to epilepsy, cerebral palsy, facial tics, foot deformity, and depression. AR at 58, 193-98. On April 3, 2017, plaintiff filed two applications for DCIB. AR at 208-11, 212-16. After a hearing on October 4, 2017, ALJ Ken Chau awarded plaintiff SSI benefits on December 19, 2017, finding her disabled beginning July 23, 2015, but denied plaintiff's claims for DCIB benefits. AR at 15-26. After plaintiff appealed the decision, this court remanded for further proceedings. AR at 939-56. The Appeals Council affirmed that plaintiff had been disabled since July 23, 2015, vacated the ALJ's decision for the period prior to July 23, 2015, and remanded the case to an ALJ for further proceedings. AR at 959.

On September 29, 2021, plaintiff appeared for a second hearing before ALJ Stacy Zimmerman ("the ALJ"). AR at 871-909. Plaintiff, represented by counsel,

testified at the hearing. AR at 873-901, 907-08. The ALJ also heard testimony from Donald Davis, a vocational expert. AR at 901-07.

For plaintiff to be entitled to DCIB under § 202(d) of the Social Security Act, she must have a disability that began before she turned 22. 20 C.F.R. § 404.350(a)(5). As such, the relevant period here is between her 18th and 22nd birthdays, or between July 15, 1997 and July 15, 2001. AR at 854. On October 22, 2021, the ALJ determined she was not disabled prior to July 15, 2001. AR at 853-63.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since her alleged onset date in 1990. AR at 856.

At step two, the ALJ found plaintiff suffered from the following severe impairments: cerebral palsy with mild right hemiparesis; seizure disorder; schizencephaly and bilateral polymicrogyria; history of clubfoot status post surgeries; and learning disorder. *Id.*

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). AR at 857.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined she had the ability to perform to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) as follows:

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

>the claimant can lift and carry 10 pounds occasionally and less than that frequently; stand and walk 2 hours in an 8-hour day, and sit 6 hours in an 8-hour day; can never climb ladders, ropes, or scaffolds or balance (as that term is defined by the Selected Characteristics of Occupations); can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; cannot be exposed to hazards, such as dangerous moving machinery, unprotected heights, or open bodies of water; cannot drive as part of the job; and can perform simple, routine tasks for two-hour increments with normal breaks.

*Id.*

At step four, the ALJ found plaintiff had no past relevant work. AR at 862.

At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that plaintiff could have performed, including document preparer, type copy examiner, and gauger. AR at 862-63. Consequently, the ALJ concluded plaintiff was not disabled as defined by the Social Security Act prior to attaining age 22. AR at 863. Plaintiff appealed the ALJ's decision to this court.

### III.
### STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration ("SSA") must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d

1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035 (citation omitted). Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998) (citations omitted); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Aukland*, 257 F.3d at 1035 (cleaned up). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "may not substitute its judgment for that of the ALJ." *Id.* (cleaned up).

## IV.

## DISCUSSION

### A. The ALJ Properly Evaluated Plaintiff's Symptom Statements

Plaintiff argues the ALJ failed to articulate legally sufficient reasons for discounting her symptom statements. P. Mem. at 5-11.

#### 1. Legal Standard

The court looks to Social Security Ruling ("SSR") 16-3p for guidance on evaluating plaintiff's alleged symptoms. "Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration." SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). (citing 20 C.F.R. § 402.35(b)(1)). In adopting SSR 16-3p, the SSA sought to "clarify that subjective symptom evaluation is not an examination of an individual's character." *Id.* at *2.

> [SSR 16-3p] makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms, and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

*Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (cleaned up).

To evaluate a claimant's symptom testimony, the ALJ engages in a two-step analysis. *Christine G. v. Saul*, 402 F. Supp. 3d 913, 921 (C.D. Cal. 2019) (quoting *Trevizo*, 871 F.3d at 678). First, the ALJ must determine whether the claimant produced objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id.* Second, if the claimant satisfies the first step, and there is no evidence of malingering, the ALJ must evaluate the intensity and persistence of the claimant's symptoms and determine the extent to which they limit her ability to perform work-related activities. *Id.*

In assessing intensity and persistence, the ALJ may consider: a claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; other treatment received; other measures used to relieve the symptoms; and other factors concerning the claimant's functional limitations and restrictions due to the symptoms. *Id.* (citing 20 C.F.R. § 416.929; SSR 16-3p, 2017 WL 5180304, at *4; *Smolen v. Chater*, 80 F.3d 1273, 1283-84, n.8 (9th Cir. 1996)). To reject the claimant's subjective symptom statements at step two, the ALJ must provide "specific, clear, and convincing" reasons, supported by substantial evidence in the record, for doing so.

*Id.* at 921, 929.

## 2. The ALJ Provided Clear and Convincing Reasons

The ALJ summarized plaintiff's testimony as follows. Plaintiff alleges disability due to epilepsy, cerebral palsy, foot deformity, and depression. AR at 858. Plaintiff claimed she had difficulty with all physical abilities except sitting due to her foot problem and seizures, and that after a seizure, she had to wait ten minutes to an hour before she could resume her normal activities. AR at 235, 858. At her hearing, plaintiff testified she graduated from Loyola Marymount University in 2002, and that while she was attending school she received accommodations including note takers, tutors, and extra time for tests. AR at 858, 880-84. She testified that despite taking medication, she had seizures between two to six times a week. AR at 858, 885-87. She testified she slept most of the day and again at night. AR at 859, 886, 891-92.

Plaintiff also highlighted additional portions of her testimony. She testified at her first hearing before ALJ Ken Chau to having "weird" feelings including dizziness, tastes in her mouth, and difficulty walking (AR at 44-45), and now notes in her memorandum that those weird feelings were diagnosed as possible partial seizures. P. Mem. at 9; *see* AR at 859-60. She also testified at that hearing to trouble balancing and to falling about four times a week. AR at 49-50.

At the first step for evaluating a claimant's symptom testimony, the ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 858. At the second step, the ALJ partly discounted plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms as not entirely consistent with the medical evidence and other evidence in the record. *Id.* Because plaintiff cleared step one and the ALJ found no evidence of malingering, the ALJ's reasons for discounting plaintiff's testimony had to be specific, clear, convincing, and supported by

1 substantial evidence.

2       The first reason the ALJ provided for discounting plaintiff's testimony was
3 that the level of functional limitation she alleged was inconsistent with her
4 activities during the relevant period of July 1997 to July 2001.  AR at 858; *see*
5 *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("The ALJ may
6 consider many factors in weighing a claimant's credibility, including ' . . . the
7 claimant's daily activities") (quoting *Smolen*, F.3d at 1284); *Bunnell v. Sullivan*,
8 947 F.2d. 341, 346 ("if the claimant engages in numerous daily activities involving
9 skills that could be transferred to the workplace, an adjudicator may discredit the
10 claimant's allegations upon making specific findings relating to the claimant's
11 daily activities").  Here, despite plaintiff's allegations of disability, she finished
12 high school, attended junior college, and graduated from Loyola Marymount in
13 2002 with certain forms of assistance through the disabled students' program.  AR
14 at 858 (citing AR at 880-85).  She also underwent esthetician training in 2003.  AR
15 at 858 (citing AR at 887-888).  While a student at Loyola Marymount, she lived
16 independently on campus, she used cabs for transportation, and traveled to Paris
17 with friends on a school trip. AR at 858 (citing AR at 884, 888-89).  The ALJ
18 found that these activities were inconsistent with her symptom statements and
19 supported the RFC determination.  AR at 858.

20       Plaintiff argues the ALJ "fail[ed] to explain how [her] minimal level of
21 functioning translates to the ability to work on a continuing basis at the substantial
22 gainful activity level." P. Mem. at 7.  Specifically, plaintiff argues the ALJ failed
23 to explain how attending college with accommodations, living independently, or
24 taking a school trip to Paris translates to an ability to work full-time.  *Id*.  But even
25 where a plaintiff's "activities suggest some difficulty functioning, they may be
26 grounds for discrediting [her] testimony to the extent that they contradict claims of
27 a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir.
28

2012).  And as defendant notes, the purpose of highlighting plaintiff's activities was not to suggest their equivalence with full-time work, but rather to note inconsistencies between and plaintiff's claimed limitations and her demonstrated level of functioning.  *See* D. Mem. at 2-3; *see Chipman v. Berryhill*, 2019 WL 1422471, at *1 (9th Cir. 2019) (unpublished) (noting "the ALJ was not required to find [plaintiff's daily] activities were comparable to activities performed during full-time working" in order to discount her testimony).  Here, the ALJ did not err by highlighting the inconsistency between plaintiff's demonstrated level of functioning and her symptom statements of debilitating seizures throughout the week and need to sleep most of the day and again at night.  Though plaintiff argues that in doing so, "the ALJ is asserting that [plaintiff] is exaggerating or malingering" (Reply at 1), inconsistency with activities of daily living is a clear and convincing reason for discounting a plaintiff's testimony, and as explained above, citing such inconsistency is not an examination of a plaintiff's character.

      The other reason the ALJ provided for discounting plaintiff's subjective complaints was their inconsistency with the medical records from the relevant period.  AR at 858-60.  Plaintiff's testimony that she experienced seizures two to six times a week during the relevant period conflicted with the medical evidence, which the ALJ found "generally reflects that the claimant was doing well and that her seizures were controlled with medication."  AR at 859-861.  The ALJ cited records from September 1996 to August 2002 from plaintiff's treating neurologist Dr. Perry Lubens that showed a history of seizures and "funny" or "weird" feelings, for which he prescribed Lamictal and Depakene.  AR at 859 (citing AR at 632-640).  The ALJ noted that when plaintiff reported increases in her seizure symptoms or "funny feelings," Dr. Lubens responded by increasing her medication dosage, which appeared to control her symptoms.  AR at 859 (citing AR at 635-640).  By increasing her medication in response to plaintiff's reports of "funny

feelings," the ALJ found Dr. Lubens seemed to acknowledge the feelings could represent partial epilepsy. AR at 859; *see also* AR at 639 (Dr. Lubens's treatment notes from September 1996 noting "partial ep–?"). Contrary to plaintiff's assertions of incapacity, Dr. Lubens noted that by May 2000, plaintiff was "doing great" after being seizure-free for two years, had her learners permit, and planned to go to Loyola Marymount in the fall. AR at 859 (citing AR at 634). In June 2001, shortly before plaintiff turned 22, Dr. Lubens noted his impression that her seizure disorder was "inactive." AR at 859 (citing AR at 633). Further, plaintiff's testimony possibly conflicts with her statement to providers in October 2015 that until six to seven months prior, her seizures had been under control and she was "only [having] auras and seizures every few months." AR at 860 (citing AR at 415).

With respect to her claims of medication side effects like drowsiness and fatigue, the ALJ noted the medical record from the relevant period reflects no such complaints, aside from possibly weight gain. AR at 859. Similarly, the ALJ noted that contrary to plaintiff's claim of disability due to depression, there was no evidence of such a medically determinable impairment on or before July 15, 2001, the day she turned 22. AR at 856. While the record contains opinions from Dr. Simonian in 2015 and Dr. Akra in 2017 regarding plaintiff's depressive disorder, the ALJ evaluated these opinions and gave them little weight due to their postdating the relevant period by many years. AR at 860 (citing AR at 452, 845). *See* SSR 16-3p, 2017 WL 5180304, at *9 ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, . . . we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.").

Plaintiff argues "the ALJ misinterpreted the medical evidence in finding that

[plaintiff] had no significant limitations due to epilepsy, cerebral palsy, or the side effects of her medications." P. Mem. at 8. But contrary to these contentions, the ALJ found that plaintiff's cerebral palsy, seizure disorder, schizencephaly and bilateral polymicrogyria, and learning disorder were severe impairments (AR at 856), and appears to have factored such impairments into her RFC determination, which provides for sedentary work subject to significant limitations in lifting, carrying, standing, walking, sitting, and climbing, and limits her to simple, routine tasks for two-hour increments with normal breaks (AR at 857). Plaintiff also highlights treatment notes and testimony regarding her "history of poor balance, weakness, fine motor tremors, facial tics and cognitive delay prior to age 22," presumably to imply the ALJ overlooked such evidence. P. Mem. at 10. But the RFC appears to account for issues with balance, weakness, and cognitive delay, and plaintiff does not explain further how the RFC should have further accounted for these issues or for her facial tics and fine motor tremors. Further, the ALJ also considered plaintiff's medication side effects including drowsiness, fatigue, depression, and anxiety, and found a lack of medical evidence to support her testimony, as explained above.

Plaintiff also argues the ALJ misinterpreted the evidence of plaintiff's history of what she called "funny" or "weird" feelings, and that she should have treated such evidence as support for plaintiff's testimony regarding the frequency and severity of her seizures. P. Mem. at 8-10. But as explained above, the ALJ specifically noted that Dr. Lubens responded to plaintiff's complaints of funny feelings by increasing her seizure medication and considered such feelings to be symptoms of possible partial epilepsy, demonstrating it was not lost on the ALJ that plaintiff's funny feelings were thought to be seizure-related. AR at 859. As such, the ALJ's conclusion that "[t]he medical evidence indicates that [] medication adjustments were generally effective in controlling her seizure activity,

including her experience of 'funny feelings'" was reasonable. *See* AR at 859-60.

Plaintiff does not argue the ALJ erred in concluding that the opinions of Dr. Lubens that contradicted her testimony were reasonable and supported by the objective medical evidence. Thus, the inconsistencies between plaintiff's testimony and the medical record was another specific, clear, and convincing reason to discount her testimony. *See Kallenbach v. Berryhill*, 766 F. App'x 518, 521 (9th Cir. 2019) (inconsistencies between the medical opinion evidence and plaintiff's subjective testimony may be a specific, clear, and convincing reason to discount the testimony).

Accordingly, the ALJ provided clear and convincing reasons for discounting plaintiff's subjective symptom testimony.

**B.** **The ALJ Did Not Err in Evaluating the Opinions of Dr. Lubens and Dr. Kalayjian**

Plaintiff argues that the ALJ improperly evaluated the medical opinions of Dr. Lubens from March 2018 and of Dr. Laura Kalayjian that concluded plaintiff's "funny feelings" were due to partial or focal dyscognitive seizures, and not merely anxiety. P. Mem. at 11-13. She argues the ALJ failed to articulate specific, legitimate reasons supported by substantial evidence for giving those opinions little weight. *Id.*

First, as defendant notes, plaintiff's argument appears to cite the wrong medical evidence regulation. D. Mem. at 7-8. The SSA issued new regulations governing the evaluation of medical opinions effective March 27, 2017. Whether the old or new regulations apply to a given claim depends on whether that claim's filing date was before or after March 27, 2017. When a claimant has "[c]oncurrently-filed claims or when one claim is open when another new claim is filed," the claimant should "use the earliest possible filing date of the claims to determine which set of rules to follow." POMS DI 24503.050D.2.a. "If the first

claim has been appealed when the second claim is filed, [the adjudicator should] consolidate and escalate the second claim to the same level of appeal as the first claim if the claims share a common issue." *Id.*

Here, plaintiff originally filed her SSI application in July 2015. That application remained unresolved until December 19, 2017, when ALJ Ken Chau found plaintiff disabled as of July 23, 2015, and awarded her SSI benefits. As such, when plaintiff applied for DCIB in April 2017, her SSI application was still open. Plaintiff's SSI and DCIB applications shared the common issue of whether she was disabled since September 1, 1990. AR at 15. Under POMS DI 24503.050D.2.a, this means the earlier filing date of plaintiff's SSI claim should be used, which was in July 2015. Because the filing date of plaintiff's DCIB claim is considered to be before March 27, 2017, the regulations applicable to plaintiffs claim are 20 C.F.R. §§ 404.1527(b) and 416.927(b).

Under these regulations, to determine whether a claimant has a medically determinable impairment, the ALJ considers different types of evidence, including medical evidence. *Id.* The regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.027(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen*, 80 F.3d at 1285; *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of a treating physician.

*Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Id.* If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons, supported by substantial evidence, for rejecting it. *Id.* "The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . a treating physician." *Lester*, 81 F.3d at 831 (citations omitted). Additionally, the opinions of a specialist about medical issues related to his or her area of expertise are entitled to more weight than the opinions of a non-specialist. *Smolen*, 80 F.3d at 1285.

       1.      **Dr. Lubens's March 2018 Opinion**

Dr. Lubens, a neurologist, treated plaintiff from December 1990 until 2011. AR at 849. At the time he was treating her, and during the relevant period, Dr. Lubens reported in 1998 that plaintiff's epilepsy was under control with medication, and in 2000 that her seizures had been inactive for the past two years. AR 846-47. He opined that she should be excused from physical education at school, should received tutoring and accommodations for exams given her learning disabilities, should be housed on campus at college in case she had a seizure, and could not drive or ride a bicycle. *Id.* The ALJ gave these opinions some weight, and included limitations in the RFC he assessed accordingly. AR at 861.

In March 2018, Dr. Lubens stated that plaintiff's EEG monitoring demonstrated focal seizures and generalized convulsions. AR at 849. He stated that while her generalized convulsions were controlled, she continued to have episodes of "funny feelings," and that "[t]hese focal seizures that were never controlled." *Id.* Additionally, he stated she had a motor tic disorder and depression, and that these various problems made it difficult for her to pursue gainful employment when she was under his care. *Id.* The ALJ gave this later

opinion by Dr. Lubens little weight. AR at 861.

### 2. Dr. Kalayjian's September 2017 Opinion

Dr. Kalayjian, a neurologist, treated plaintiff starting in 2011. AR at 844. On September 29, 2017, Dr. Kalayjian stated that based on her review of Dr. Lubens's records for plaintiff, plaintiff had dyscognitive seizures since 1990 and met the disability criteria of Listing 11.02C. *Id.* She stated plaintiff had complex partial seizures every few days. *Id.* She noted that after medication changes in 1994, plaintiff's seizure description changed and she began in 1996 to describe "funny feelings." *Id.* She stated that in 2015, plaintiff's "funny feelings" were captured with video EEG monitoring, which showed dyscognitive seizures. *Id.* The remainder of Dr. Kalayjian's opinion referenced time outside the relevant period. *Id.* The ALJ gave this opinion little weight. AR at 860.

### 3. The ALJ Properly Considered the Opinions of Dr. Kalayjian and Dr. Lubens

As noted, in reaching her RFC determination, the ALJ gave little weight to Dr. Lubens's March 2018 opinion and to Dr. Kalayjian's September 2017 opinion. AR at 860-61. Plaintiff appears to concede these opinions were contradicted by other medical evidence in the record, but maintains there were no conflicting medical opinions. *See* P. Mem. at 12. As defendant points out, however, Dr. Robert Moore's consultative opinion from November 2015 (to which the ALJ gave partial weight) found only seizure-related safety restrictions on what plaintiff could do, such as prohibiting her from working at heights or around moving machinery, but opined no other restrictions. AR at 458, 860. This contradicts Dr. Kalayjian's opinion that plaintiff met Listing 11.02C, and so was fully disabled, and is inconsistent with Dr. Lubens's March 2018 opinion that plaintiff's problems made it difficult to pursue employment. As such, the ALJ needed to provide specific and legitimate reasons, supported by substantial evidence, to discount the opinions.

*See Lester*, 81 F.3d at 830-31.  Plaintiff contends the ALJ failed to do so.  P. Mem. at 11-13.

The first reason the ALJ provided for rejecting each of the opinions was their inconsistency with the medical record from the relevant period.  AR at 860-61.  The ALJ noted that both Dr. Lubens's March 2018 opinion and Dr. Kalayjian's September 2017 opinion were inconsistent with Dr. Lubens's treatment notes recorded during the relevant period, which reported that plaintiff's seizures were controlled, she made few complaints of "funny feelings," and showed no evidence of depression.  AR at 860-61. The ALJ also noted that Dr. Lubens's 2018 opinion was inconsistent with his prior statements about her limitations.  AR at 861.  *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (ALJ may reject treating opinion if unsupported by the record as a whole or objective medical findings).  The second reason the ALJ provided was that both opinions were inconsistent with plaintiff's daily activities during the relevant period, including her demonstrated ability to attend college, earn her degree, and travel.  AR at 860-61.  *See Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) ("A conflict between a treating physician's opinion and a claimant's activity level is a specific and legitimate reason for rejecting the opinion.").

Plaintiff argues that "[t]he ALJ's rationale for rejecting the treating sources' opinions does not meet the substantial evidence standard and the ALJ failed to provide adequate articulation as required by law." P. Mem. at 12-13.  She does not seem to dispute the ALJ's finding that the opinions in question were inconsistent with her daily activities.  As for consistency with the relevant medical evidence, plaintiff first seems to argue the ALJ was not qualified to resolve any conflict, arguing the ALJ did not rely on any medical opinion and so improperly relied on her own lay opinion.  This is incorrect; as explained above, the ALJ gave partial weight to Dr. Moore's opinion and some weight to Dr. Lubens's earlier opinions.

16

      Plaintiff goes on to argue the ALJ should have resolved any inconsistency between Dr. Lubens's opinions during the relevant period and the more recent opinions of Dr. Lubens and Dr. Kalayjian by rejecting the former. In support of that argument, plaintiff states, without citing the record, that "Dr. Lubens himself acknowledged his error in judgment years prior, chocking [sic] up [plaintiff's] symptoms to mere anxiety, when in fact, her symptoms were due to dyscognitive or absence seizures" (P. Mem. at 12), and that "Dr. Luben's [sic] acknowledged that he misdiagnosed [plaintiff's] seizures as mere anxiety." Reply at 3. These are mischaracterizations of Dr. Lubens's opinions both during the relevant period and in 2018. During the relevant period, Dr. Lubens did not attribute plaintiff's "funny feelings" only to anxiety. While his treatment notes state plaintiff had a "weird feeling" which was "probably anxiety" (AR at 632), he responded to such feelings by increasing her seizure medication, which shows that even during the relevant period, he considered the feelings to be seizure-related. AR at 635-40. And nowhere in Dr. Lubens's 2018 opinion did he "acknowledge[] his error in judgment years prior," nor does plaintiff cite to any other record in which he did so.

      Plaintiff also highlights the EEG monitoring conducted in 2015 that showed her "funny feelings" were dyscognitive seizures, and seems to argue that this confirmation warrants disregarding Dr. Lubens's assessments of the feelings during the relevant period. P. Mem. at 11. But once again, despite not having EEG confirmation, Dr. Lubens still administered treatment for these feelings as seizure-related. And regardless of how Dr. Lubens diagnosed plaintiff's "funny feelings," the fact remains that his treatment notes do not indicate such feelings were debilitating. Rather, by May 2000, Dr. Lubens stated plaintiff was "doing great." AR at 634.

      Plaintiff argues the ALJ should have given more weight to Dr. Lubens's

March 2018 opinion and to Dr. Kalayjian's September 2017 opinion because, while they "were given after the relevant period, they still provided important and relevant information regarding [her] condition during the time in question." Reply at 3. But the ALJ did not reject the opinions because they were from after the relevant period; as explained above, she rejected them because they were inconsistent with both the medical record and plaintiff's activities during the relevant period.

Accordingly, the ALJ provided two specific and legitimate reasons to discount Dr. Lubens's March 2018 opinion and Dr. Kalayjian's September 2017 opinion as she did, and those reasons given were supported by substantial evidence. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) ("An ALJ can satisfy the substantial evidence requirements by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." (cleaned up)); *Aukland*, 257 F.3d at 1035 ("Substantial evidence is more than a mere scintilla, but less than a preponderance." (citation omitted)).

## V.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

DATED: March 31, 2023

SHERI PYM
United States Magistrate Judge